UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY JO SLADE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.: 1:12-cv-01253 - LJO- JLT<br><br>FINDINGS AND RECOMMENDATIONS DIRECTING REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g), AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF SHERRY JO SLADE AND AGAINST DEFENDANT CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

Sherry Jo Slade ("Plaintiff") asserts she is entitled to benefits the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the medical evidence, and seeks judicial review of the decision denying her application for benefits. For the reasons set forth below, the Court recommends the action be **REMANDED** for further proceedings.

**PROCEDURAL HISTORY**[1]

On September 15, 2005, Plaintiff filed an application for benefits, alleging disability beginning September 1, 2004. AR at 154-57. The Social Security Administration denied her claim initially and upon reconsideration. *Id. at* 122-27. After Plaintiff testified at a hearing on August 21, 2007, an ALJ determined Plaintiff was not disabled and denied benefits on August 30, 2007. *Id.* at 96-103.

---

[1] Citations to the Administrative Record will be designated "AR," followed by the appropriate page number.

Plaintiff requested review of the ALJ's decision by the Appeals Council, and "submitted a CD some 1100+ pages of additional medical evidence." AR at 66. Although "the bulk of the evidence predate[d] the period at issue," and some "was duplicate evidence already contained in the record," the Appeals Council identified additional, relevant evidence that should be considered by an ALJ. *Id.* at 66- 67. Consequently, the Appeals Council remanded the case on September 22, 2009, for an ALJ to "offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review that is pertinent to the period at issue, take any further action needed to complete the administrative record and issue a new decision." *Id.* at 68.

The ALJ held a second hearing on November 30, 2010. AR at 1166-1203. Again, the ALJ found Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on December 21, 2010. *Id.* at 27-36. The Appeals Council of Social Security denied Plaintiff's request for review on May 29, 2012. *Id.* at 2-4. Thus, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated the action before this Court on July 31, 2012, seeking judicial review of the ALJ's decision. (Doc. 1). Defendant lodged the Administrative Record on November 27, 2012. Plaintiff filed her opening brief in the action on April 27, 2013. (Doc. 19). Defendant filed a brief in opposition on June 28, 2013 (Doc. 23), to which Plaintiff filed a reply on July 15, 2013. (Doc. 24).

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole

must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The claimant has the burden of proof to establish a prima facie case of disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). Once a claimant does so, the burden shifts to the Commissioner to prove the claimant has the ability to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence, opinions and hearing testimony. 20 C.F.R. §§ 404.1527, 404.1529.

**A.    Medical Opinions**

Plaintiff had a consultative examination at Capital Area Pain Management Associates by Dr. Majid Ghauri on January 26, 2005. AR at 260-61. Dr. Ghauri noted Plaintiff described her pain "as steady, dull achy pain," which was "4/10 in a scale of intensity." *Id*. at 260. According to Dr. Ghauri,

Plaintiff's "motor strength in upper and lower extremities [was] 5/5" and her reflexes were intact. *Id.* Further, Plaintiff had a "full range of motion of [her] musculoskeletal spine with no limitations." *Id.*

Dr. Sandeep Sherlekar completed a physical residual functional capacity assessment on October 6, 2005. AR at 243-47; 440-44. Dr. Sherlekar noted Plaintiff had lumbar and cervical radiculopathy, and it was a "chronic long term condition." *Id.* at 243. According to Dr. Sherlekar, Plaintiff's pain ranged from "6-9/10," and she had a fatigue level of "9/10." *Id.* Dr. Sherlekar opined Plaintiff was able to sit and stand/walk for two hours each in an eight-hour day. *Id.* at 244. In addition, she could lift and carry 0-5 pounds frequently and 5-10 pounds occasionally, but never lift and carry more than 10 pounds. *Id.* Dr. Sherlekar opined Plaintiff could not stoop, push, kneel, pull, or bend. *Id.* at 245.

Dr. Arthur Barletta performed a consultative examination on June 8, 2005, upon the referral of Dr. Leon. AR at 292-93. Dr. Barletta observed an MRI showed "a herniation with spondylosis at C4-C5 encroaching on the right neuroforamen." *Id.* at 292. On September 26, 2005, Dr. Barletta completed portions of a physical residual functional capacity questionnaire. *Id.* at 285-89. He noted Plaintiff suffered from "headaches, severe muscle spasms, [and] pain down [her] arms." *Id.* at 285. Dr. Barletta declined to estimate how long Plaintiff could sit, stand, or walk; or how much she could lift and carry. *Id.* at 286. However, Dr. Barletta opined Plaintiff was unable to push, stoop, pull, or bend. *Id.* at 287. In addition, he believed Plaintiff was unable to keep her neck in a constant position, and was precluded from work that would require her to do so, such as looking at a computer screen or looking down at a desk. *Id.*

On December 8, 2005, Dr. Alex Leon completed a "Fibromyalgia Residual Functional Capacity Questionnaire." AR at 273-77. Dr. Leon noted he treated Plaintiff approximately every two months, and that Plaintiff met the American College of Rheumatology criteria for fibromyalgia. *Id.* at 273. In addition, Dr. Leon noted Plaintiff had been diagnosed with "cervical disc disease & spondylosis, lumbar disc disease & spondylosis, bilateral lumbar facet joint disease, [illegible], left carpal tunnel syndrome, osteoporosis, migraine headaches, irritable bowel syndrome, ADHD, [learning disorder], [and] insomnia." *Id.* Dr. Leon believed Plaintiff's pain would frequently interfere with her attention and concentration on even simple work tasks. *Id.* He believed Plaintiff had "significant limitations

with reaching, handling or fingering" but could occasionally lift and carry 10 pounds. *Id.* at 275-76. Further, Dr. Leon opined Plaintiff could never twist or climb ladders; occasionally stoop (bend), crouch and squat; and frequently climb stairs; sit and stand for 20 minutes each at one time and less than two hours total in an eight-hour day; and stand less than two hours in an eight-hour day. *Id.*

On January 5, 2006, Dr. Rehana Hussain performed a psychiatric consultative examination. AR at 294. Dr. Hussain observed Plaintiff had a depressed mood and restricted affect, and she did "not show much emotional reactions though she [had] episodes of crying especially during the interview." *Id.* at 296. Dr. Hussain determined Plaintiff was "alert, oriented to place, person and time," and "[h]er immediate recall was within normal limits." *Id.* In addition, "[h]er insight and judgment are fair." *Id.* Dr. Hussain diagnosed Plaintiff with major depression, recurrent with flight of ideas, and a chronic pain disorder. *Id.* at 298. Evaluating the impact of Plaintiff's symptoms, Dr. Hussain noted:

> The patient has some social life. Only once in a while she may go out with a friend to eat or may go to a movie with her husband. She has difficult to stay focused and concentrate. She is unable to tolerate any work related stress and demands. She lacks motivation and interest to hold any gainful job activity. Her severe chronic pain restricts her from any kind of activity.

*Id.* Dr. Hussain believed Plaintiff had an "inability to function secondary to severe, chronic neck and back pain," and gave Plaintiff a GAF score of 45.[2] *Id.*

Dr. Djordje Gikic performed an internal medicine examination on January 14, 2006. AR at 300. According to Dr. Gikic, Plaintiff "ha[d] been suffering from fibromyalgia since at least 2002," and was "diagnosed with a chronic fatigue syndrome . . . about the same time." *Id.* Also, Plaintiff had depression, irritable bowel syndrome, carpal tunnel syndrome, hypothyroidism, and left foot neuroma. *Id.* Dr. Gikic opined Plaintiff's "symptoms seemed to involve mainly chronic pain syndrome with depressive symptoms." *Id.* at 303. Dr. Gikic observed Plaintiff had a normal gait and "[f]ull range of motion in the elbows, forearms and wrists" but "limited" movement of the cervical and lumbar spines. *Id.* at 302.

---

[2] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34.

Dr. Michael Oidick completed a psychiatric review technique form and mental residual functional capacity assessment on January 24, 2006. AR at 305-24. Dr. Oidick indicated Plaintiff was "not significantly limited" in her ability to understand, remember, and carry out simple instructions, but she was "moderately limited" with detailed instructions. *Id.* at 305. In addition, Dr. Oidick found Plaintiff was "moderately limited" with the ability to maintain attention and concentration; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek. *Id.* at 305-06. Plaintiff was "not significantly limited" in all areas of social interaction and adaptation. *Id.* at 306. Dr. Oidick opined: "[Plaintiff's] mood appears to moderately limit her being able to handle detailed instructions, maintain her A/C, and be able to perform activities [at] customary tolerances and a consistent pace." *Id.* at 307.

On May 23, 2006, Dr. Eddie Nakhuda completed a physical residual functional capacity assessment. AR at 385-92. According to Dr. Nakhuda, Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for about six hours in an eight-hour day; sit for about six hours in an eight-hour day; and had an unlimited ability to push and pull. *Id.* at 386. Plaintiff was able to occasionally climb rams, stairs, ladders, ropes and scaffolds; and frequently balance, stoop, kneel, crouch and crawl. *Id.* at 387. Dr. Nakhuda opined Plaintiff had no communicative or environmental limitations. *Id.* at 389.

On July 18, 2007, Dr. Eugene Huang performed a consultative physical examination upon the request of one of Plaintiff's treating physicians. AR at 568-69; 847-49. Plaintiff was "[i]n no acute distress," but reported her "[p]ain was 6 out of 10." *Id.* at 568. Dr. Huang observed Plaintiff "ha[d] an antalgic gait with decrease[d] range of motion, flexion, extension, rotation, and lateral blending." *Id.* Also, Plaintiff showed "discomfort on passive movement." *Id.* Plaintiff's straight leg test was positive and she had "positive facet loading and sacroiliac joint tenderness of the lower back." *Id.*

Dr. Grady Dale reviewed Plaintiff's updated activities of daily living "and other pertinent medical evidence" on July 24, 2006. AR at 393. He observed there was "no psychiatric evidence of worsening of condition." *Id.* Accordingly, Dr. Dale affirmed the assessment of Dr. Oidick. *Id.*

On December 4, 2007, Dr. Galene Soloniuk-Tays, one of Plaintiff's treating physicians, completed a questionnaire regarding Plaintiff's impairments. AR at 644-45. She noted Plaintiff had

"chronic pain secondary to a) degenerative cervical disc disease b) fibromyalgia [and] c) migraine headaches." *Id.* at 644. Dr. Soloniuk-Tays opined Plaintiff was able to sit for 10-15 minutes, walk for 10 minutes, and stand for 10 minutes in an eight-hour day. *Id.* She explained Plaintiff must "lie down several times a day for 15 min periods of time." *Id.* According to Dr. Soloniuk-Tays, Plaintiff was able to reach, handle, feel, push, pull, grasp, and reach for 10% of an eight-hour workday each, or no more than 10 minutes at one time. *Id.* at 645. Dr. Soloniuk-Tays believed Plaintiff's impairments precluded her from working an eight-hour day at any exertion level, and that Plaintiff had been disabled to this extent since September 18, 2006. *Id.* at 644-45.

Dr. David Kyle completed a similar questionnaire on August 23, 2010. AR at 815-16. He opined Plaintiff was unable to work, and had been unable to work for "approximately 5 yrs." *Id.* at 816. Specifically, Dr. Kyle noted Plaintiff had "moderate and variable" symptoms, and was "unable to do prolonged sitting or standing." *Id.* In addition, he noted Plaintiff was unable to raise her hands above her shoulder, and had "limited" ability to handle, feel, push, pull, and grasp. *Id.* at 816.

**B.     Hearing Testimony**

1.     August 21, 2007

Plaintiff testified that she last worked in 2003 and was no longer able to do so due to pain in her neck and back, depression, and other health issues. AR at 1131. She explained she had fusions in her back and "permanent nerve damage" that went down her arms. *Id.* In addition, Plaintiff reported she had restless leg syndrome, major depression, migraine headaches, and osteoarthritis. *Id.* at 1131, 1138, 1140.

She reported the pain in her neck felt "like taking a cigarette and putting it out on your back." AR at 1132. Plaintiff said she had the pain "most of the time" and it caused physical pain when lifting her arms, washing her hair, and "turning on a fan that's in the ceiling." *Id.* In addition, Plaintiff said she was unable to bend or reach due to the pain in her back. *Id.* at 1133. She said the osteoarthritis caused "stiffness" in her hips, shoulders, and knees. *Id.* at 1140. Plaintiff said that she had to "lay with a pillow between [her] knees" to sleep at night. *Id.* at 1150.

Plaintiff attributed her depression to her daughter being in an abusive relationship and "divorc[ing] herself from her family." AR at 1135-36. Plaintiff reported her depression affected her

7

sleep and caused an uneven sleep pattern. *Id.* at 1136-37. She said she would "isolate" herself and not want to be around anyone. *Id.* at 1137. To occupy her time, Plaintiff said she would "piddle around the house" and watch television. *Id.* at 1146. In addition, she liked to decorate and would try to "make [her] surroundings look better." *Id.* at 1147. Further, Plaintiff said she had difficulty with concentration and her memory. *Id.* at 1141. She explained that she would intend to speak to doctors about issues, but then forget what she wanted to say to the doctor. *Id.* Also, Plaintiff reported did not drive by herself because she would "get lost a lot." *Id.* at 1148.

Plaintiff estimated she was able to stand for five to ten minutes before she had to lie down. AR at 1148. She believed she was able to sit for fifteen to twenty minutes before she felt pain. *Id.* at 1149. Plaintiff said she was able to lift two pounds with her right hand and one pound with her left hand, because her left hand was worse. *Id.* at 1151-52.

2.      November 30, 2010

Plaintiff reported that as of 2008, she had been receiving mental health treatments for about two or three years for "[d]epression, and anxiety, and suicidal thoughts." AR at 1187. She said the medication she was taking caused her to "get real sleepy and dizzy" and she "could sleep five or six hours during the daytime." *Id.* However, Plaintiff said she "had a problem going to sleep and staying asleep" at night. *Id.* She began using a cane because she was "too wobbly" and it helped alleviate the pressure from her back. *Id.* at 1188. Plaintiff said she also used the cane for balance when walking and standing. *Id.* at 1189. Plaintiff said she was unable to work as a clerk because she it was "just too stressful" and it caused her pain to increase. *Id.*

Vocational expert Jose Chaparro ("VE") testified at the administrative hearing. AR at 1200. The VE characterized Plaintiff's past relevant work as an audit clerk as "sedentary and skilled." *Id.* Work as a general clerk was "light and semiskilled," her work as a receptionist was "sedentary and semiskilled," and her work as an insurance sales agent was "light and skilled." *Id.*

The ALJ asked the VE to consider a hypothetical individual the same age, education and past relevant work experience as Plaintiff. AR at 1200. The person was able to "lift and carry 20 pounds occasionally and 10 pounds frequently;" was able "to stand, walk, and sit six hours each;" and could occasionally climb stairs, balance, stoop, crouch, look upward, push, pull, and raise the upper

extremities behind 90 degrees and occasionally reach overhead." *Id.* The individual could not crawl or climb ropes, ladders, or scaffolds; and "would need to change positions . . . every 30 to 60 minutes." *Id.* With these limitations, the VE opined the worker "could work as a receptionist, insurance sales agent, [and] general clerk." *Id.* at 1201. Next, the ALJ asked the VE to consider an individual based upon Plaintiff's testimony. *Id.* The VE opined a person with such limitations would not be able to perform Plaintiff's past relevant work. *Id.*

**C.    The ALJ's Findings**

As an initial matter, the ALJ determined Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2008. AR at 29. Pursuant to the five-step process, the ALJ found Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2004 through her date last insured." *Id*. Second, the ALJ found Plaintiff's severe impairments included "degenerative disc disease, spondylolisthesis, and fibromyalgia" through her date last insured. *Id.* She did not have an impairment or a combination of impairments that met or medically equaled a listing, including Listing 1.04. *Id.* at 30.

The ALJ found Plaintiff had the residual functional capacity ("RFC") through her date last insured "to perform light work as defined in 20 CFR 404.1567(b)." AR at 30. Specifically, the ALJ determined:

> The claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, and she could sit, stand, and walk up to six hours a day in an eight-hour workday, changing positions every 30 to 60 minutes. She could occasionally climb stairs, balance, stoop, crouch, look upward, raise the upper extremity beyond 90 degrees, and reach overhead. The claimant could not climb ropes, ladders or scaffolds and could not crawl. She could frequently kneel and balance. She could occasionally push and pull.

*Id.* With this RFC, the ALJ found Plaintiff "was capable of performing past relevant work as a receptionist (sedentary semi-skilled); sales agent (light skilled); and general clerk (light semi-skilled)." *Id.* at 36-37. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 37.

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred in evaluating the medical evidence and set forth "insufficient reasons" for rejecting the opinions of a treating physician, Dr. Barletta, and examining physician, Dr.

9

Hussain.  (Doc. 19 at 8-9).  On the other hand, Defendant contends "[t]he ALJ provided specific and legitimate reasons" for discounting the physicians' opinions.  (Doc. 20 at 7, 11).

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  In addition, an examining physician's opinion is given more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2).  Thus, the courts apply a hierarchy to the weight afforded to the opinions of physicians.

### A. The ALJ erred in rejecting the opinion of Dr. Barletta.

An ALJ may reject the controverted opinion of a treating physician with "specific and legitimate" reasons, supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence."  *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").  The opinion of a treating physician may be rejected whether or not the opinion is contradicted by another.  *Magallanes*, 881 F.2d at 751.

Discussing the medical evidence, the ALJ noted he gave "[l]ittle weight" to the assessment of Dr. Barletta.  AR at 34.  The ALJ observed, "Dr. Barletta had treated the claimant only twice when he completed the September 2005 assessment, and did not treat her after December 2005."  *Id.* Defendant contends the ALJ did not err in considering the duration of Dr. Barletta's treating relationship because "[t]he regulations provide that the ALJ give greater weight to a provider who has more knowledge about Plaintiff's impairment in terms of the length of the treatment relationship and the frequency of

the examination." (Doc. 23 at 10) (citing 20 C.F.R. § 404.1527(c)). As Defendant argues, this Circuit has determined that the weight afforded to a physician's opinion "depends on the duration, frequency, and nature of the contact with the claimant." *Id.* (citing *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)). However, Defendant fails to acknowledge that the ALJ gave "little weight" to the opinion of Dr. Barletta, a treating physician, while giving "substantial weight" to the opinions of Dr. Gikic, who examined Plaintiff only once and Dr. Doren, who neither treated nor examined Plaintiff. Accordingly, the failure of the ALJ to explain this incongruity leaves the Court little option but to find the duration of Dr. Barletta's treatment of Plaintiff, in these circumstnaces, was not a specific, legitimate reason for rejecting the opinion of Dr. Barletta.

Defendant contends the ALJ was not required to adopt the opinion of Dr. Barletta because he failed to cite objective medical evidence that supported his "utterly cursory responses" on the questionnaire and his opinion was contradicted by the medical record.[3] (Doc. 23 at 7-9). In addition, Defendant argues Dr. Barletta's opinion was internally inconsistent, and inconsistent with Plaintiff's daily activities. *Id.* at 8. These may constitute specific, legitimate reasons for giving less weight to the opinion of a treating physician. *See, e.g., Burkhart v. Bowen,* 856 F.2d 1335, 1339-40 (9th Cir.1988) (an ALJ may reject an opinion that is unsupported by medical findings and test reports); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (opinion may be discounted where it is inconsistent with a claimant's level of activity); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ permissibly rejected treating physician's opinion containing contradictory observations). Significantly, however, these reasons were not articulated by the ALJ.

The Court is constrained to review only the reasoning asserted by the ALJ, and cannot consider post hoc reasoning by Defendant, or even the evidence upon which the ALJ could have relied. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts" and finding error were the ALJ affirmed the ALJ's decision "based on evidence that the ALJ did not discuss"). The Ninth Circuit has explained that the Court cannot engage

---

[3] To the contrary, Dr. Barletta referenced an MRI that showed "a herniation with spondylosis at C4-C5 encroaching on the right neuroforamen." AR at 292. Thus, the opinion was not completely lacking the support of objective medical evidence.

in "*post hoc* rationalizations that attempt to intuit what the [ALJ] might have been thinking," and cannot affirm on rationale that was not articulated by the ALJ. *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009). Because the reasons identified by Defendant were not articulated by the ALJ, the Court cannot find the ALJ set forth specific, legitimate reasons for rejecting the opinion of Dr. Barletta, who opined Plaintiff was unable to push, stoop, pull, or bend, and that Plaintiff was precluded from work that would require her to hold her neck in a constant position. AR at 287. The ALJ did not adopt these limitations, yet failed to properly reject them. Accordingly, the ALJ erred in his evaluation of Dr. Barletta's opinion.

**B.      Remand is appropriate in this matter.**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Also, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to properly reject the opinion of Plaintiff's treating physician. This opinion is intertwined with the RFC determination by the ALJ, and the testimony of the vocational expert regarding Plaintiff's ability to perform work in the national economy. Consequently, the matter should be remanded for the ALJ to re-evaluate the medical opinions, because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the opinion of the treating physician was credited.

///

**FINDINGS AND RECOMMENDATIONS**

For all these reasons, the ALJ erred in the evaluation of the medical evidence and in giving less weight to the opinion of Plaintiff's treating physician, Dr. Barletta. Because the ALJ failed to apply the correct legal standards, the decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Therefore, the Court does not address the remaining issue raised by Plaintiff on appeal regarding the ALJ's evaluation of the opinion of Dr. Hussain, because remand is appropriate for the ALJ to reconsider the medical evidence.

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. The matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court be **DIRECTED** to enter judgment in favor of Plaintiff Sherry Slade and against Defendant, Carolyn Colvin, Acting Commissioner of Social Security.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file and serve written objections with the Court. A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 5, 2013**              /s/ Jennifer L. Thurston
                                                                    UNITED STATES MAGISTRATE JUDGE